**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re*: | Chapter 11 |
| DEAN & DELUCA NEW YORK INC., *et al.*, | |
| Debtors.[1] | Case No. 20-10916 (MEW) |
| | (Jointly Administered) |

**DECLARATION OF LAWTON BLOOM IN
SUPPORT OF CONFIRMATION OF THE DEBTORS' FIFTH
MODIFIED PROPOSED JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF DEAN & DELUCA NEW YORK, INC. AND ITS DEBTOR AFFILIATES**

I, Lawton Bloom, declare as follows:

1.       I am the Co-Chief Restructuring Officer of Dean & DeLuca New York, Inc. and each of its affiliated debtors and debtors-in-possession (the "Debtors").

2.       I submit this Declaration in support of the Debtors' request for confirmation of the *Debtors' Fifth Modified Proposed Joint Chapter 11 Plan Of Reorganization Of Dean & Deluca New York, Inc. And Its Debtor Affiliates*, filed contemporaneously herewith (as may be modified hereafter and including all exhibits and supplements, the "Plan").[2]

3.       In my role as Co-Chief Restructuring Officer, I am generally familiar with the Debtors' operations and affairs. I assisted the Debtors in preparing to file the above-captioned

---

[1]     The Debtors in the Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number are as follows: Dean & Deluca New York, Inc. (3111); Dean & Deluca, Inc. (2998); Dean & Deluca Brands, Inc. (2878); Dean & Deluca International, LLC (8995); Dean & Deluca Small Format, LLC (1806); Dean & Deluca Atlanta, LLC (6678); Dean & Deluca Markets, LLC (2674). The registered address for the Debtors is 251 Little Falls Drive, Wilmington, Delaware 19808.

[2]     Capitalized terms used herein without definition have the meanings provided for in the Plan.  In addition, any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

chapter 11 cases (the "Chapter 11 Cases") and have been involved in the administration of these Chapter 11 Cases for the Debtors.

4.      Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents and information provided to me by employees working under my supervision or, as to matters involving the requirements for confirmation of the Plan under section 1129 of the Bankruptcy Code, my reliance on the advice of the Debtors' bankruptcy counsel. If called upon, I could and would testify competently to the facts set forth herein.

## A.      **Background**

5.      On March 31, 2020 (the "Petition Date"), the Debtors filed voluntary petitions commencing the Chapter 11 Cases. The Debtors have continued in possession of their property as debtors-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. No statutory committees have been appointed. The factual background of the Debtors' business and the reasons for commencing this Chapter 11 Case are set forth in the *Declaration of Joseph Baum in Support of First Day Pleadings* [Docket No. 3], which I incorporate herein by reference.

6.      The Debtors filed the original version of their Plan on June 12, 2020 and followed up with a First Amended Plan and attendant disclosure statement (as subsequently amended, the "Disclosure Statement") on July 13, 2020.

7.      On October 2, 2020, the Court entered the *Order (A) Approving Disclosure Statement, (B) Approving the Solicitation Procedures, (C) Approving  the Form of Ballots and Notices in Connection Therewith, (D) Establishing the Plan Confirmation Schedule and (E) Granting Related Relief* [Docket No. 358] (the "Disclosure Statement Order"). The Disclosure

Statement Order, inter alia, (a) approved the Disclosure Statement; (b) established procedures for soliciting and tabulating votes to accept or reject the Plan; and (c) scheduled a hearing on confirmation of the Plan for November 5, 2020 at 10:00 a.m. (the "Confirmation Hearing"). The Confirmation Hearing was adjourned to November 24, 2020 by further order of the Court. Docket No. 412.

8.      On or before October 6, 2020, the Debtors, through their Claims and Solicitation Agent, Stretto, caused a copy of the Disclosure Statement, the Plan, the Plan ballots and appropriate notices to be mailed to each party in interest entitled to vote on the Plan in accordance with the Disclosure Statement Order, all as more particularly set forth in the affidavit of service at Docket No. 395 and in the *Declaration of Angela Tsai on Behalf of Stretto Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Third Modified Proposed Joint Chapter 11 Plan of Reorganization of Dean & DeLuca New York, Inc. and Its Debtor Affiliates* dated November 3, 2020 [Docket No. 404] (the "Voting Agent Declaration").

9.      On and before November 13, 2020, the Debtors filed the Plan Supplement [Docket Nos. 250, 360, 415, 423], reserving rights to modify or supplement such documents.

10.     Contemporaneously with this Declaration, the Debtors have filed or will file  the *Proposed Findings Of Fact, Conclusions Of Law And Order Confirming Debtors' Plan Of Reorganization* (as may be amended, the "Proposed Confirmation Order"), the *Memorandum of Law in Support of Confirmation of the Debtors' Modified Second Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code*, dated November 20, 2020 (the "Confirmation Memorandum"), and certain modifications to the Plan Supplement.

**B.** **Compliance with the Bankruptcy Code**

11. On the basis of my discussion with Debtors' legal counsel, my understanding of the Plan, the Bankruptcy Code and events occurring before and throughout the Chapter 11 Cases, I am advised and believe that the Plan fully complies with all of the applicable requirements of the Bankruptcy Code governing confirmation of Chapter 11 plans, as set forth below.

12. **Section 1129(a)(1)**. Based on my review of the Plan and all related materials, and based on my discussions with the Debtors' legal counsel, it is my understanding that the Plan complies with the applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.

13. **Proper Classification (Sections 1122 and 1123(a)(1))**. Article III of the Plan designates 5 Classes of Claims and two Classes of Equity Interests. I am familiar with the classification of Claims and Equity Interests in the Plan and believe that such classification system is based upon the legal nature and relative rights of the Claims and Equity Interests, and is not proposed for any improper purposes. Each Class contains only Claims or Equity Interests that are substantially similar to other Claims and Equity Interests therein. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, the DIP Facility Claim, Professional Compensation Claims and Priority Tax Claims have not been classified. Accordingly, based on my discussions with the Debtors' bankruptcy counsel, I believe that the classification scheme set forth in the Plan is consistent with sections 1122 and 1123(a)(1) of the Bankruptcy Code.

14. **Specification of Unimpaired Classes and Treatment of Impaired Classes (Sections 1123(a)(2) and 1123(a)(3))**. Article III of the Plan specifies all Classes of Claims and Interests that are Impaired or Unimpaired, and sets forth the Applicable treatment afforded to

4

term under the Plan. Therefore, I believe that the Plan is consistent with sections 1123(a)(2) and (3) of the Bankruptcy Code.

15.     **No Discrimination (Section 1123(a)(4))**. Article III of the Plan provides the same treatment for each type of Claim or Equity Interest within a particular Class, unless the holder of a particular Claim or Equity Interest has agreed to different treatment. Therefore, I believe that the Plan is consistent with section 1123(a)(4) of the Bankruptcy Code.

16.     **Implementation of the Plan (Section 1123(a)(5))**. Article IV of the Plan and various other provisions of the Plan provide adequate and proper means for implementation of the Plan. Therefore, I believe that the Plan is consistent with section 1123(a)(5) of the Bankruptcy Code.

17.     **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))**. In Article IV.K.4, the Plan expressly prohibits the issuance of nonvoting equity securities in the Debtors' charters. Additionally, the Reorganized Parent Charter has been submitted, which prohibits issuance of nonvoting equity securities. The issuance of nonvoting securities is thus impossible. Additionally, and excluding Intercompany Interests, the Debtors have only one class of securities, with voting power distributed pro rata among holders of such securities, and with no preference rights between holders. Therefore, I believe that the Plan is consistent with section 1123(a)(6) of the Bankruptcy Code.

18.     **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7))**. Article IV.C.8 provides that on the Effective Date, the members of the Debtor Boards of Directors shall be deemed to have become members of the Reorganized Debtor Boards, and all persons who are then officers and employees of the Debtors shall be deemed to have become officers and/or employees of the Reorganized Debtors; and furthermore that the Reorganized Debtor Boards and

the officers of the Reorganized Debtors shall have such duties imposed on them by applicable state law and the Reorganized Debtor Organizational Documents. Article IV.C.8 provides that the Debtors' directors and officers shall have the fiduciary duties imposed under applicable law. In sum, the manner of selection of officers and directors will be consistent with governing law and the Debtors' practices prior to and during the Chapter 11 Cases, and likewise consistent with the interests of holders of Claims and Interests and with public policy. Accordingly, I believe that the requirements of Bankruptcy Code Section 1123(a)(7) are satisfied.

19. **Selection of Creditor Trustee (11 U.S.C. § 1123(a)(7))**. Article IV.D provides that a Creditor Trustee shall be appointed to serve under the Creditor Trust Agreement. The initial Creditor Trustee has been identified in the Creditor Trust Agreement, and any successor to the initial Creditor Trustee selected under the terms of the Creditor Trust Agreement will be appointed in a manner consistent with the interest of holders of GUC Cash Election Claims and with public policy. Accordingly, the requirements of Bankruptcy Code Section 1123(a)(7) are satisfied.

20. **Impairment of Classes (11 U.S.C. § 1123(b)(1) and (5))**. Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims or Equity Interests under the Plan. Therefore, I believe that the Plan is consistent with section 1123(b)(1) of the Bankruptcy Code.

21. **Treatment of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))**. In accordance with Bankruptcy Code Section 1123(b)(2), Article VII of the Plan provides for the rejection of all executory contracts and unexpired leases of the Debtors that have not expired by their own terms as of the Effective Date, except for those executory contracts and unexpired leases that (a) have been assumed, assumed and assigned or rejected pursuant to

previous orders of the Bankruptcy Court, or (b) are the subject of a pending motion to assume or a motion or permitted notice to assume and assign, in each case filed as of the Effective Date. Therefore, I believe that the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

22.     **Additional Plan Provisions (11 U.S.C. § 1123(b))**. The Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code, including: (a) the provisions of Article IV of the Plan regarding the means for executing and implementing the Plan, including the retention of Retained Causes of Action and Assigned Causes of Action; (b) the provisions of Article VII of the Plan governing the treatment of executory contracts and unexpired leases; (c) the provisions of Article V of the Plan governing distributions on account of Allowed Claims, particularly as to the timing and calculation of amounts to be distributed; (d) the provisions of Article IV.C of the Plan with respect to the consolidation of the Debtors; (e) the provisions of Article IX of the Plan regarding the Releases, Exculpations, and Injunction; and (f) the provisions of Article X of the Plan regarding retention of jurisdiction by the Court over certain matters after the Effective Date. Therefore, I believe that the Plan is consistent with section 1123(b) of the Bankruptcy Code.

23.     **Debtors' Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2))**. To the best of my knowledge, and based on my discussions with Debtors' legal counsel, (1) the Debtors, as Plan proponents, have complied with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules; and (2) the solicitation of acceptances or rejections of the Plan complied with the Disclosure Statement Order and all applicable laws, rules and regulations.

24.     **The Plan is Proposed in Good Faith (11 U.S.C. § 1129(a)(3))**. To the best of my knowledge, the Debtors have proposed the Plan in good faith and not by any means

forbidden by law. The Debtors, as Plan proponents, negotiated the Plan and all related documents in good faith, at arm's length and with the legitimate and honest purpose of liquidating the Debtors' remaining assets and distributing any proceeds to holders of Claims and Equity Interests. I believe that this conclusion is supported by the substantial negotiations related to the Plan among the Debtors, the Committee, the Bank, Pace, the Finch Parties and Sorapoj Techakraisri, and with additional discussion and input from the United States Trustee and other parties at interest. I further believe that the acceptance of the Plan by holders of Claims that voted reflects the overall fairness of the Plan and the acknowledgment by the Debtors' stakeholders that the Plan has been proposed in good faith and for proper purposes.

25.     **Payments for Services or Costs and Expenses are Reasonable and Approved (11 U.S.C. § 1129(a)(4))**. To the best of my knowledge, any payments made, or to be made, by the Debtors for services or for costs in connection with the Chapter 11 Cases, including all administrative expense claims under sections 503 and 507 of the Bankruptcy Code, or in connection with the Plan and incident to the Chapter 11 Case, have been approved by, or are subject to the approval of, the Court as reasonable.  In addition, fees and expenses incurred by professionals retained by the Debtors and Reorganized Debtor shall be payable according to the Orders approving such professionals' retention applications, the Plan and the Confirmation Order.

26.     **Directors, Officers, Trustees and Insiders (11 U.S.C. § 1129(a)(5))**. Article IV.C provides that on the Effective Date, the members of the Debtor Boards of Directors shall be deemed to have become members of the Reorganized Debtor Boards, and all persons who are then officers and employees of the Debtors shall be deemed to have become officers and/or employees of the Reorganized Debtors; and furthermore that the Reorganized Debtor Boards and

the officers of the Reorganized Debtors shall have such duties imposed on them by applicable law and the Reorganized Debtor Organizational Documents. Article IV.C provides the Debtors' directors and officers shall have the fiduciary duties imposed under applicable law. In sum, the manner of selection of officers and directors will be consistent with governing law and the Debtors' practices prior to and during the Chapter 11 Cases, and likewise consistent with the interests of holders of Claims and Interests and with public policy. The sole member of the Debtor Boards of Directors is Sorapoj Techakraisri. The Debtors' officers are Sorapoj Techakraisri, Lawton Bloom of Argus Management Corporation, and Joseph Baum of CFGI. The Reorganized Debtors shall not compensate Mr. Techakraisri unless and until authorized to do so by the Reorganized Debtor Boards, and shall compensate Mr. Bloom and Mr. Baum as provided in the *Order Granting Debtors' Application Pursuant to 11 U.S.C. §§ 105(a) and 363(b) for Authority to Employ and Retain Argus Management Corporation to Provide the Debtors with Chief Restructuring Officers and Related Managerial Services and Assistance* [Docket No. 76]. Additionally, the Plan provides that a Creditor Trustee shall be appointed to serve under the Creditor Trust Agreement. The initial Creditor Trustee has been identified on the record in the Chapter 11 Cases, and any successor to the initial Creditor Trustee selected under the terms of the Creditor Trust Agreement will be appointed in a manner consistent with the interest of holders of GUC Cash Election Claims and with public policy. The Plan therefore complies with Bankruptcy Code Section 1129(a)(5).

27.    **No Rate Changes (11 U.S.C. § 1129(a)(6))**. I am informed that this section is inapplicable because there is no governmental regulatory commission that has jurisdiction over the rates that the Debtors charge.

28.     **Best Interests of Creditors (11 U.S.C. § 1129(a)(7))**. I believe that with respect to each Impaired Class, each holder of a Claim or Equity Interest against the Debtors has accepted the Plan or will receive or retain under the Plan as much or more than they would receive if the Chapter 11 Case was converted to a case under Chapter 7 of the Bankruptcy Code.

29.     **Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9))**.  Through the provisions of the Plan governing Administrative Claims, Professional Compensation Claims and Priority Tax Claims, the Plan provides for the payment in full, on the later of (a) the Effective Date, or as soon as reasonably practicable thereafter, and (b) as soon as reasonably practicable after the date such Claim becomes an Allowed Claim, of all Claims entitled to priority under Bankruptcy Code Section 507(a).  Accordingly, I believe that Bankruptcy Code Section 1129(a)(9) is satisfied.

30.     **Acceptance by at Least One Impaired Class (11 U.S.C. §§ 1129(a)(8) and 1129(a)(10))**. As provided in the *Declaration of Angela Tsai on Behalf of Stretto Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Third Modified Proposed Joint Chapter 11 Plan of Reorganization of Dean & DeLuca New York, Inc. and Its Debtor Affiliates* dated November 3, 2020 [Docket No. 404] (the " Voting Agent Declaration"), Classes 1 and 4 of Impaired Claims entitled to vote have accepted the Plan, determined without including any acceptance of the Plan by an insider.  To the extent of any assertion of insider status, and/or to the extent of any objection to the claim of any voting party, I understand that such objections have been resolved on a consensual basis and are agreed to be deemed withdrawn at this time.  In addition, the Debtors have requested that the Court order that Classes 2, 3, 5, and 7 be deemed to have accepted the Plan pursuant to the Disclosure Statement.

Accordingly, I believe that the Plan satisfies sections 1129(a)(8) and (10) of the Bankruptcy Code.

31.     **<u>Feasibility of the Plan (11 U.S.C. § 1129(a)(11))</u>**. I believe that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors.

32.     Attached to the Debtors' Disclosure Statement at Exhibit C was analysis of the feasibility of the Plan (the "<u>Feasibility Analysis</u>"). The Feasibility Analysis assumed that $5 million of the Exit Facility would go to the payment administrative, priority, and certain general unsecured claims. Pursuant to the latest modifications to the Plan, $7.1 million is to be transferred to a Creditor Trust for such purposes, with the difference to be taken from the Reorganized Debtors' projected working capital. To facilitate this modification, the Debtors and Plan Sponsor Parties have made adjustments to the Exit Facility as well as projected post-Effective Date operations, including the following:

a. The Bank has agreed to defer payments of interest on the Exit Facility, resulting in cash savings to the Reorganized Debtors of $645,000 per year until the Reorganized Debtors have sufficient free cash flow to begin paying interest;

b. The Reorganized Debtors have assumed their agreement with Pace by which Pace has committed to providing back-office support to the Reorganized Debtors (*see* Docket No. 420) and have decided to allow the office of the CEO in Thailand to handle business development efforts. As a result, the Reorganized Debtors no longer contemplate hiring personnel after the Effective Date, resulting in savings of $45,000 per month; and

c. Based on these changes, the Reorganized Debtors now project to have positive cash flow shortly after the Effective Date and to maintain an adequate cash cushion of over $400,000 at all times.

33.     Based on the foregoing and discussions with the Debtors' bankruptcy counsel, I understand that the Plan is feasible.

34.     **Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12))**. The payment of fees payable pursuant to 28 U.S.C. § 1930 will be the responsibility of the: (a) the Debtors prior to the Effective Date and (b) the Reorganized Debtors and/or the Creditor Trust, as specified in the Plan, through such time as a particular Chapter 11 Case is closed, dismissed, or converted.  Thus, it is my understanding based on discussions with the Debtors' bankruptcy counsel Bankruptcy Code Section 1129(a)(12) is satisfied.

35.     **Retiree Benefits (11 U.S.C. § 1129(a)(13))**. The Debtors are not required to pay any retiree benefits. As such, I am informed that Bankruptcy Code Section 1129(a)(13) is inapplicable.

36.     **Domestic Support Obligations (11 U.S.C. § 1129(a)(14))**. The Debtors are not required to pay any domestic support obligations; accordingly, I am informed that section 1129(a)(14) of the Bankruptcy Code is not applicable.

37.     **Individual Debtors with Objection by Unsecured Claimant (11 U.S.C. § 1129(a)(15))**. The Debtors are not individuals; accordingly, I am informed that section 1129(a)(15) of the Bankruptcy Code is not applicable.

38.     **Corporation or Trust That is Not Moneyed, Business or Commercial Corporation or Trust (11 U.S.C. § 1129(a)(16))**. The Debtors are a moneyed, business or commercial corporation; accordingly, I am informed that section 1129(a)(16) of the Bankruptcy Code is not applicable.

39.     **Fair and Equitable (11 U.S.C. § 1129(b))**. It is my understanding based on discussions with the Debtors' bankruptcy counsel that the Plan does not discriminate unfairly and I believe the Plan is fair and equitable as to all holders of Impaired Claims and Equity Interests in the Debtors.

40.      **Principal Purpose of the Plan (11 U.S.C. § 1129(d))**. The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the requirements of Section 5 of the Securities Act of 1933, and no governmental unit has objected to the confirmation of the Plan on any such grounds.

41.      **Bankruptcy Rule 3016(a)**. The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

42.      **Bankruptcy Rule 3016(c)**. The Plan, specifically Article IX, describes in specific and conspicuous language the injunction, exculpation and limitation of liabilities provided for in the Plan.

43.      **Bankruptcy Rule 3017**. The Debtors have given notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d) and the Disclosure Statement Order.  The solicitation materials prescribed by the Disclosure Statement Order were transmitted to the creditors entitled to vote on the Plan in accordance with Bankruptcy Rule 3017(d).

44.      **Releases and Discharges**. I believe that each of (a) the exculpation and limitation of liability provisions of the Plan (the "Exculpation") with respect to (i) the Debtors, (ii) the directors, officers, or employees of any of the Debtors or any of the Debtors' non-Debtor subsidiaries serving at any time during the pendency of the Chapter 11 Cases, (iii) the professionals or court-retained agents of the Debtors, or (iv) any of the successors or assigns of any of the parties identified in the foregoing clauses (i) through (vi), (b) the releases under the Plan (the "Releases") with respect to any party, as granted by the Releasing Parties, and (c) the injunction provisions under the Plan (the "Injunction") with respect to (i) all Entities or Persons that have held, hold or may hold or have asserted, assert or may assert Claims against or Interests in the Estates with respect to any such Claim or Interest, and (ii) respecting Article IX of the Plan

13

and the Estates: (1) are within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (2) are essential means of implementing the Plan pursuant to Bankruptcy Code Section 1123(a)(5); (3) are integral elements of the transactions incorporated into the Plan; (4) confer material benefits on, and are in the best interests of, the Debtors, their Estates and their creditors; (5) are important to the overall objectives of the Plan to finally resolve all claims among or against the key parties in interest in the Chapter 11 Cases with respect to the Debtors; and (6) are consistent with Bankruptcy Code Sections 105, 1123 and 1129, and other applicable provisions of the Bankruptcy Code.

45.    **Consensual Releases**.  I believe that the releases set forth in the Plan are appropriate and fully consensual.  Holders of Claims in Voting Classes have granted releases solely upon their vote to accept the Plan or their express consent to grant such releases.

46.    **Likelihood of Satisfaction of Conditions Precedent to Effectiveness**.  To the best of my knowledge, each of the conditions precedent to the effective date set forth in Article VIII of the Plan, is reasonably likely to be satisfied or waived in accordance with the provisions of Article VIII of the Plan.

47.    **Modifications to the Plan (11 U.S.C. § 1127)**. To clarify certain provisions of the Plan and address concerns raised informally by various parties, the Debtors have made certain modifications to the Plan since its solicitation. None of the modifications to the Plan have been material or adverse to any party, other than those that have expressly requested and/or consented to such modifications.  Indeed, the modifications executed since the filing of the Plan have largely been requested by the affected parties. As such, I am informed that the Plan as modified satisfies Bankruptcy Code Section 1127.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: November 20, 2020                          DEAN & DELUCA NEW YORK,
New York, New York                                INC.


By:   _/s/ Lawton Bloom_____
      LAWTON BLOOM, CO-CHIEF
      RESTRUCTURING OFFICER